CASABLANCA TRAX, INC., Plaintiff-Appellee, v. TRAX RECORDS, INC., *et al.*, Defendants-Appellants.

First District (6th Division)   No. 1—06—2194

Opinion filed June 6, 2008.

Duane Morris, John T. Schriver, and Richard P. Darke, all of Chicago, for appellants.

Barbara L. Yong and Caren A. Lederer, both of Golan & Christie LLP, of Chicago, for appellee.

JUSTICE McNULTY delivered the opinion of the court:

What happens when the parties to a contract put a broad arbitration clause in one document, but include no such clause in a second document providing security for the promises made in the first document? At least under the circumstances of this case, we hold that the parties must submit the question of arbitrability to the arbitrator first, before addressing any claims that may not be subject to the arbitration clause.

## BACKGROUND

Rachel Cain Sherman and Larry Sherman used a number of trade names and record labels, including Trax Records, Inc., to create and market "house" music. In 2002 they negotiated an agreement with Casablanca Trax, Inc., for production and distribution of recordings. On December 17, 2002, the parties signed three separate documents detailing the terms of the agreement.

The joint venture agreement (JVA) assigned to the Shermans responsibility for finding new artists and producing their recordings while Casablanca bore responsibility for marketing the recordings. Casablanca promised, in the JVA, to advance the Shermans $20,000 each month for expenses. Casablanca would recover the advances from sales of recordings released by the joint venture. The JVA also included the following provisions:

> "19. Casablanca shall advise Trax and keep Trax up to date with respect to revenues generated by the joint venture on a monthly basis. A formal accounting shall be forwarded to Trax on a semi-annual basis *** setting out those revenues generated by the joint venture during the prec[e]ding semi-annual period and the deductions of all allowable recoupments, costs, fees and expenses. ***
> * * *
> 24. Any dispute arising ou[t] of or pursuant to this agreement shall not be taken to litigation, but shall be settled in the following sequence, although steps may be passed by mutual consent:
> a) Negotiation;
> b) Mediation (non-binding arbitration);
> c) Binding arbitration."

In a separate document Casablanca promised to loan the Shermans $100,000, with scheduled monthly repayments deducted from

the $20,000 advanced each month under the JVA. The loan agreement further provided:

"To the extent that any monies have been advanced by the Lender to the Debtor prior to the effective date of this Agreement, it is hereby acknowledged by the parties hereto that all such prior advances shall comprise amounts advanced as part of the Advance under the Loan and that such prior advances were made to the Debtor on and subject to the terms and conditions contained in this Agreement."

The loan agreement did not include an arbitration clause.

In the third document the Shermans gave Casablanca a security interest in their music-related assets, including their recording equipment and the recordings made thereon. The security agreement secured "all duties and obligations of the Debtor to the Lender." If the Shermans defaulted on their secured debts, the security agreement gave Casablanca the right to "take possession of all or any part of the collateral with power to *** sell, lease or dispose of all or any part of the Collateral." The security agreement did not include an arbitration clause.

Casablanca advanced to the Shermans the sums promised. In March 2004 the parties signed a modification of the JVA. The modification specified sales targets and granted Casablanca the right, if sales did not meet the targets, to recoup all of the monetary advances it made to the Shermans. The modification did not affect the arbitration clause or Casablanca's duty to account for sales.

On May 26, 2005, Casablanca sued the Shermans, along with the many recording companies the Shermans operated, seeking replevin of the collateral listed in the security agreement. In a second count Casablanca sought to recover for breach of both the JVA and the loan agreement. When the court awarded Casablanca judgment on the replevin count, Casablanca seized most of defendants' assets described in the security agreement.

In their answer to the second count defendants admitted that Casablanca had loaned them $100,000 under the loan agreement and advanced them $367,000 under the JVA. Because Casablanca deducted loan repayments from the advances, according to the complaint defendants owed a balance of less than $28,000 on the $100,000 loan covered by the loan agreement. Casablanca claimed:

"7. *** Plaintiffs advanced over $367,000.00 in cash and expenses for the benefit of Defendants (the 'Advances'). Defendants are obligated to repay the Advances pursuant to the Joint Venture Agreement. ***

8. The amounts due under the Loan Agreement and the Advances are collectively referred to as the 'Indebtedness.'"

9. The Indebtedness is secured by a security interest in certain assets and equipment of the Defendants (the 'Collateral') and evidenced by that certain General Security Agreement."

Defendants admitted the allegations of those three paragraphs.

Defendants posed three affirmative defenses to the breach of contract claim, including charges that Casablanca breached the JVA by failing to account for sales and by failing to seek arbitration. The court struck the affirmative defenses, but it permitted defendants to file a motion for alternative dispute resolution. Defendants filed such a motion in December 2005.

Defendants also sought leave to file a counterclaim that reiterated its affirmative defenses. Casablanca then moved for summary judgment on its claim for breach of contract. It offered in support the affidavit of its president, who swore to the allegations in the complaint, including the allegation that Casablanca "performed all its obligations under the Loan Agreement, Joint Venture Agreement, and Security Agreement." Defendants verified their answer in which they charged Casablanca with failing to send defendants the semiannual accounting reports the JVA required.

In April 2006 the trial court granted Casablanca summary judgment on the breach of contract claim and denied the motion for arbitration. The court agreed with Casablanca's contention that the arbitration clause in the JVA did not apply to a dispute over the repayment of advances made pursuant to the JVA:

"While the Joint Venture Agreement deals generally with how the parties are to cooperate and further their common interest under the venture, the Loan Agreement and Security Agreement govern the lending relationship created when Defendants borrowed money and took substantial Advances from Casablanca. *** [T]hese instruments unmistakably evidence the intent to treat the lending relationship differently and more formally than the other aspects of the venture relationship."

The court also held that "Defendants did not invoke the arbitration provision [and] made no demand for arbitration."

Defendants moved to vacate the judgment. In June 2006, several weeks before the hearing on the motion to vacate, Casablanca began the process of selling, pursuant to the security agreement, the assets it seized under the replevin count. Casablanca claimed that it circulated a notice of public sale setting a sale date of June 28, 2006. Defendants responded with affidavits stating that they did not receive statutorily requisite notice. The court denied defendants' motion to stay the sale. On June 28 Casablanca sold itself all of the assets it had seized. Two days later the trial court denied defendants' motion to vacate the judgment on the breach of contract claim. Defendants now appeal.

## ANALYSIS

Defendants claim that the court committed reversible error when it denied the motion for arbitration. On appeal we need to determine whether the record sufficiently supports the trial court's decision denying arbitration. *Bass v. SMG, Inc.*, 328 Ill. App. 3d 492, 496 (2002). Insofar as the trial court decided the issue as a matter of contract interpretation, we review the ruling *de novo. Bass*, 328 Ill. App. 3d at 496; *In re Marriage of Turrell*, 335 Ill. App. 3d 297, 305 (2002).

Defendants formally moved for arbitration in December 2005, less than seven months after Casablanca filed this lawsuit. We find on this record no indication that defendants ever acted in a manner inconsistent with the assertion of their right to arbitrate. See *Liberty Chevrolet, Inc. v. Rainey*, 339 Ill. App. 3d 949, 953 (2003). The record contradicts the trial court's finding that defendants failed to invoke the arbitration clause. Defendants did not waive the right to arbitrate.

Casablanca argues that the trial court correctly interpreted the contracts. The JVA requires arbitration of "[a]ny dispute arising ou[t] of or pursuant to" the agreement. The parties adopted the language of "[t]he broadest arbitration clauses." *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 445 (1988). Our supreme court noted that in some cases, even in cases where the parties adopted such a broad clause, the subject matter of a dispute may not clearly fall within the scope of the agreement. *Barr*, 124 Ill. 2d at 446. The court said that "when the language of an arbitration clause is broad and it is unclear whether the subject matter of the dispute falls within the scope of arbitration agreement, the question of substantive arbitrability should initially be decided by the arbitrator." *Barr*, 124 Ill. 2d at 447-48.

Here the security agreement and the loan agreement include no arbitration clause. Casablanca argues that the entire debt protected by the security agreement arose solely under the loan agreement, without reference to the JVA. We disagree. The loan agreement applies to only the $100,000 loan specified therein and to "any monies [that] have been advanced by the Lender to the Debtor prior to the effective date of this Agreement." The loan agreement sets its effective date at the same date on which the parties signed the JVA, before Casablanca started making the advances of $20,000 per month that form the bulk of the debt here. As Casablanca did not make those advances prior to the effective date of the loan agreement, the loan agreement does not cover the advances under the JVA. In the complaint Casablanca recognized that the security agreement protected a debt that included both the amount due under the loan agreement and the advances made pursuant to the JVA. Because defendants have repaid most of

the debt under the loan agreement, the remaining debt arose almost entirely from the JVA. Thus, Casablanca seeks to enforce the security agreement, a contract that includes no arbitration clause, but which relates closely to the JVA, which has a broad arbitration clause.

In *A.E. Staley Manufacturing Co. v. Robertson*, 200 Ill. App. 3d 725 (1990), the defendant, an executive with the plaintiff, agreed to continued employment in exchange for certain retirement benefits. The contract included a clause broadly requiring arbitration of " '[a]ny controversy or claim arising out of or relating to this Agreement.' " *A.E. Staley*, 200 Ill. App. 3d at 728. The parties later signed a " 'Supplemental Executive Retirement Plan' " (*A.E. Staley*, 200 Ill. App. 3d at 728) that included no arbitration clause. When the plaintiff terminated the defendant's employment, it paid amounts it calculated under both agreements. The defendant demanded full payment of benefits due under the supplemental plan and sought arbitration of the dispute. The plaintiff sued for a judgment declaring that it had no duty to arbitrate because the defendant made no claim under the original retirement agreement and the supplemental plan had no arbitration clause. The court granted the plaintiff the summary judgment the plaintiff sought. The appellate court reversed, holding: "In order to get the full scope of defendant's benefits, the documents must be read in conjunction." *A.E. Staley*, 200 Ill. App. 3d at 731. The court found that the dispute arose out of the initial retirement agreement. *A.E. Staley*, 200 Ill. App. 3d at 731.

The appellate court followed *A.E. Staley* in *Nagle v. Nadelhoffer, Nagle, Kuhn, Mitchell, Moss & Saloga, P.C.*, 244 Ill. App. 3d 920 (1993). In that case the parties signed an employment contract that included an arbitration clause. Later they signed a stock redemption agreement that did not include such a clause. The plaintiff resigned and sought payment of amounts due under the stock redemption agreement. The trial court denied defendants' motion for arbitration. The appellate court held:

> "A generic arbitration clause in an employment contract is broad enough to encompass any dispute which concerns [the plaintiff's] employment *** or his termination thereof ***. ***
>
> * * *
>
> The extent to which the stock redemption agreement depends on, or is interrelated with, the employment agreement is unclear from the record before us. *** The arbitrator, not the court, is the entity designated to interpret ambiguities in the contract. [Citation.] Therefore, we conclude that the question of whether the arbitration clause in the employment agreement covers disputes under the stock redemption agreement is itself arbitrable." *Nagle*, 244 Ill. App. 3d at 925-30.

Here the debt for which Casablanca seeks repayment arose under the JVA. The arbitrator should, in the first instance, address Casablanca's arguments that the arbitration clause does not apply to its claims.

The loan agreement governs repayment of the $100,000 loan Casablanca made to defendants. Neither that agreement nor the security agreement that protects that loan includes an arbitration clause. According to section 2(d) of the Uniform Arbitration Act:

"Any action or proceeding involving an issue subject to arbitration shall be stayed *** or, if the issue is severable, the stay may be with respect thereto only." 710 ILCS 5/2(d) (West 2004).

This section leaves the court two options when a case includes one issue subject to arbitration and a separate issue not subject to arbitration. The court may "stay the entire proceeding pending arbitration, or, if the issue is severable, the stay may be granted with respect to that issue only." *Board of Managers of the Courtyards at Woodlands Condominium Ass'n v. IKO Chicago, Inc.*, 183 Ill. 2d 66, 74-75 (1998). Policies favoring arbitration support a stay of all court proceedings pending arbitration "where the arbitrable and nonarbitrable issues, although severable, are also interrelated in terms of a complete resolution of the cause between the parties." *Kelso-Burnett Co. v. Zeus Development Corp.*, 107 Ill. App. 3d 34, 41 (1982); see also *IKO Chicago*, 183 Ill. 2d at 76.

The security agreement establishes that the same collateral protects the loan under the loan agreement and the advances under the JVA. The arbitrator's resolution of the debt under the JVA and use of collateral to pay the debt may dispose of all issues concerning repayment of the separate $100,000 loan. We find the issues surrounding the loan agreement and the arbitrable advances under the JVA so interrelated that judicial economy favors a stay of all court proceedings pending arbitration. Accordingly, we reverse the judgment entered in favor of Casablanca on its claim for breach of contract and we remand for arbitration of that claim.

Casablanca contends that it had a right to conduct the judicial sale to itself of all of defendants' assets under section 9—610 of the Uniform Commercial Code (810 ILCS 5/9—610(a) (West 2004)), without reference to this lawsuit. Casablanca concludes that reversal of the judgment on the claim for breach of contract does not affect the validity of the sale.

Section 9—610 establishes that "[a]fter default, a secured party may sell *** or otherwise dispose of any or all of the collateral." 810 ILCS 5/9—610(a) (West 2004). The security agreement here gives Casablanca the right to sell the collateral to satisfy the debt after

defendants default. The Uniform Arbitration Act requires the court to stay proceedings in any case involving an issue subject to arbitration, unless that issue is severable from nonarbitrable issues in the case.

The court resolved a similar issue in *Morrie Mages & Shirlee Mages Foundation v. Thrifty Corp.*, 916 F.2d 402 (7th Cir. 1990). There a purchase agreement included an arbitration clause. In a separate agreement, with no arbitration clause, the defendant guaranteed payment of amounts required by the purchase agreement. The guarantee specifically made the defendant's liability absolute and unconditional if the purchaser defaulted. *Morrie Mages*, 916 F.2d at 403. The plaintiff sued to enforce the guarantee. The trial court denied the defendant's motion to stay proceedings pending arbitration, finding the absolute guarantee immediately enforceable. The United States Court of Appeals for the Seventh Circuit reversed. The broad arbitration clause in the purchase agreement assigned to the arbitrator the initial decision as to whether the purchaser had defaulted. *Morrie Mages*, 916 F.2d at 406-07; see also *Stone Distribution Co. v. Meyers*, 157 F.R.D. 405, 408 (N.D. Ill. 1994).

Here, too, the broad arbitration clause in the JVA gives the arbitrator authority to decide whether the parties have agreed to arbitrate issues of default and the amount of debt that remains unpaid. The separate security agreement, like the separate guarantee in *Morrie Mages*, includes no arbitration clause. Following the reasoning of *Morrie Mages*, we hold that the trial court should have stayed proceedings on the sale of defendants' assets pending arbitration.

Casablanca made the advances at issue pursuant to the JVA, which includes a broad arbitration clause. Therefore, the arbitrator must decide the arbitrability of issues related to repayment, even where those issues also involve a security agreement that has no arbitration clause. Because the loan agreement interlocks with the JVA, judicial economy favors a stay of proceedings on any claims related to the loan agreement pending the arbitrator's decision on arbitrability of claims for repayment of advances under the JVA. The arbitrator's decision must precede any sale pursuant to the security agreement. We reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

Reversed and remanded.

McBRIDE, P.J., and JOSEPH GORDON, J., concur.